# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | |
|---|---|
| GRENADINAH DELA LLANA, | No. 86474-2-I |
| Appellant, | ORDER GRANTING MOTION TO PUBLISH |
| v. | |
| DARRION HOLIWELL, | |
| Respondent. | |

The appellant, Grenadinah Dela Llana, having filed a motion to publish opinion, and the hearing panel having reconsidered its prior determination and finding that the opinion will be of precedential value; now, therefore it is hereby:

ORDERED that the unpublished opinion filed November 3, 2025, shall be published and printed in the Washington Appellate Reports.

For the Court:

_Feldman, J._

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| GRENADINAH DELA LLANA, | No. 86474-2-I |
| Appellant, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| DARRION HOLIWELL, | |
| Respondent. | |

FELDMAN, J. — Grenadinah Dela Llana appeals the trial court's order declining to incarcerate Darrion Holiwell until such time as he credibly accounts for the location of approximately 70 weapons and surrenders those weapons, if any, in his possession or control. We reverse the trial court's order and remand for further proceedings consistent with this opinion.

I

In January 2022, Dela Llana filed a petition for a domestic violence protection order (DVPO) seeking protection from Darrion Holiwell. The trial court entered a temporary order for protection and an order to surrender and prohibit weapons. The surrender order required Holiwell to immediately surrender all firearms and dangerous weapons.

Holiwell subsequently filed a declaration of non-surrender, stating he did not possess any firearms or dangerous weapons to surrender pursuant to the order. That same day, the King County domestic violence firearms unit produced a report listing 70 firearms registered to Holiwell. Soon after, the trial court determined that Holiwell was not in compliance with the surrender order.

Holiwell filed another declaration of non-surrender on March 10, 2022. He stated:

> I acknowledge that I previously purchased and owned numerous firearms registered under my name during the period from 1995-2014, as indicated in the *Firearms Information* filed in this case on February 9, 2022. However, during that period of time, I sold and transferred many of my registered firearms in private, off-market transactions with fellow competition shooters, friends, and colleagues at the King County Sheriff's Office (my former employer).[1] Many of the firearms listed on the Firearms Information were transferred out of my ownership and possession through these private transactions. Unfortunately, I do not have official receipts or transfer documents from these private transactions.

Holiwell further explained that law enforcement had seized any remaining firearms in 2014 when he was convicted of promoting prostitution in the second degree, theft in the first degree, and a violation of the Uniform Controlled Substances Act (all felony offenses) and sentenced to 17 months of incarceration.

Having claimed that he no longer owned, possessed, or had access to any of the firearms listed on the report but lacked "official receipts or transfer documents," Holiwell informed the trial court that he would "make every effort to gather the requisite documentation." The court determined that Holiwell was not in compliance with the weapons surrender order.

---

[1] Holiwell is a former deputy with the King County Sheriff's Office. Among his roles as a deputy, Holiwell served as the chief firearms instructor and a member of the SWAT team.

On March 16, 2022, the trial court entered a DVPO protecting Dela Llana and her children from Holiwell for ten years and another order for Holiwell to immediately surrender all firearms and dangerous weapons. Later that month, the trial court again found Holiwell was not in compliance with the surrender order.

Between April 2022 and November 2023, the trial court held approximately twenty hearings concerning Holiwell's compliance with the surrender order. The court never found him in compliance. Beginning June 30, 2022, the court held Holiwell in contempt for failure to comply and imposed increasing financial sanctions and terms of imprisonment to coerce compliance.

In August 2023, Dela Llana filed a motion requesting that the court impose the remedial contempt sanction of imprisonment until compliance with the surrender order. She noted that Holiwell "has been willing to serve approximately a total of 115 days (served in increasing increments of 5, 10, 30, and 70 days) in jail now and incur substantial financial obligations to the court in order to keep his guns and/or not account for them." She argued that without this sanction the surrender order is ineffective, and she is denied substantive due process.

The trial court entered its final order in January 2024. The court found that Holiwell remained in contempt of court. Further, "[h]e has remained defiantly opposed to following this Court's order, despite this Court's repeated determination that he understands the Order, is capable of following the Order, but is electing to disobey it. His explanations in mitigation of the contempt status have been unavailing." Nonetheless, the court declined to impose imprisonment until compliance as Dela Llana requested, stating "[t]he undersigned judge is

- 3 -

unconvinced that that indeterminate sanction of incarceration would [be] effective or that it would be the right outcome in this matter."

Concluding "that the sanctions contemplated under RCW 7.21.030(2)(a) and (b) would be ineffective to compel Mr. Holiwell's compliance with the Order to Surrender," the court imposed a sanction of $100,000 due 30 days from entry of the order. Holiwell could purge contempt by surrendering the outstanding weapons, at which point "[t]he Court will schedule a contempt review hearing at short notice if he accomplishes that task." Lastly, the court stated that no further hearings would be set until Holiwell complied with the order and sought to purge contempt.

Dela Llana appeals.

II

Dela Llana argues the trial court abused its discretion by declining to impose her requested contempt sanction of incarceration until compliance with the surrender order and by terminating the weapons surrender proceedings. We agree.

"A finding of contempt and punishment, including sanctions, lies within the trial court's sound discretion, and we will not disturb such findings and sanctions absent an abuse of that discretion." *State v. Berty*, 136 Wn. App. 74, 83, 147 P.3d 1004 (2006). Relevant here, a trial court abuses its discretion if a decision is manifestly unreasonable, which occurs when the decision "is outside the range of acceptable choices, given the facts and the applicable legal standard." *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

The trial court found Holiwell in contempt due to his failure to comply with the court's surrender order. When a court orders the surrender of weapons pursuant to a DVPO, "law enforcement and judicial processes must emphasize swift and certain compliance with court orders prohibiting access, possession, and ownership of all firearms." RCW 9.41.801(1). Courts must "verify timely and complete compliance with orders to surrender and prohibit weapons." RCW 9.41.801(6)(a). If a court has any indication that the respondent has possession, custody, or control of a dangerous weapon, "a compliance review hearing shall be held" during which "[t]he respondent must be present and provide proof of compliance with the court's order." RCW 9.41.801(6)(a). The party ordered to surrender weapons has the burden to prove compliance by a preponderance of the evidence. *Braatz v. Braatz*, 2 Wn. App. 2d 889, 898, 413 P.3d 612 (2018). The court must determine whether the party has met the burden of proof of compliance. *Id.* at 899.

RCW 9.41.801 includes provisions that enable the trial court to enforce the surrender order. If the court determines that probable cause exists to believe the respondent has failed to surrender all firearms and a crime occurred, the court "shall issue a warrant describing the firearms or dangerous weapons and authorizing a search of the locations where the firearms and dangerous weapons are reasonably believed to be and the seizure of all firearms and dangerous weapons discovered pursuant to such search." RCW 9.41.801(4). Additionally, where the court has probable cause to believe the respondent was aware of and failed to fully comply with the order "pursuant to its authority under chapter 7.21

- 5 -

RCW, the court may issue an arrest warrant and initiate a contempt proceeding to impose remedial sanctions." RCW 9.41.801(7)(a).

The trial court attempted to coerce Holiwell to comply with the surrender order by imposing remedial contempt sanctions under RCW 7.21.030(2). A court may find a person in contempt of court if "that person has failed or refused to perform an act that is yet within the person's power to perform." RCW 7.21.030(2). With a finding of contempt, a court may order (a) imprisonment, which "may extend only so long as it serves a coercive purpose," (b) "[a] forfeiture not to exceed two thousand dollars for each day the contempt of court continues," and/or (c) "[a]n order designed to ensure compliance with a prior order of the court." RCW 7.21.030(2)(a)-(c). The statute also authorizes trial courts to impose "[a]ny other remedial sanction other than the sanctions specified in (a) through (c) of this subsection [listed above] if the court expressly finds that those sanctions would be ineffectual to terminate a continuing contempt of court." RCW 7.21.030(2)(d).

After months of unsuccessful terms of imprisonment pursuant to RCW 7.21.030(2)(a) and financial sanctions pursuant to RCW 7.21.030(2)(b), the trial court found those sanctions would be ineffective to compel Holiwell's compliance. Additionally, the court was "unconvinced" that indeterminate incarceration would be effective or "the right outcome in this matter." Instead, the court imposed a remedial sanction under RCW 7.21.030(2)(d) requiring Holiwell to pay $100,000 within 30 days. Holiwell could purge contempt by complying with the surrender order, but otherwise the court would not hold additional compliance or contempt hearings.

By entering this order, the court discontinued its oversight of Holiwell's compliance with the surrender order until such time as Holiwell surrendered the outstanding weapons. In so doing, the trial court effectively released Holiwell from his legal obligations without credibly accounting for the location of approximately 70 weapons. This is an abandonment of the statutory duty imposed on the court by RCW 9.41.801. The trial court acknowledged, "the Legislature has demanded that the person subject to an Order to Surrender be responsible for accounting for their weapons." The court further acknowledged that Holiwell had failed to comply with this statutory mandate: "He has consistently shared the same, unpersuasive, message with this Court which can be summarized as 'I don't have the guns and I don't know where they are.' Mr. Holliwell's assertions here are not credible and they have not been credible since the outset." But rather than hold Holiwell accountable in accordance with the legislative mandate, the trial court imposed a sanction with little coercive value[2] and ended its oversight without ensuring compliance.

Given the facts of Holiwell's intransigence and the requirements of RCW 9.41.801, the trial court's order was "outside the range of acceptable choices" and, therefore, manifestly unreasonable. *Littlefield*, 133 Wn.2d at 47. While the court's frustration with Holiwell's intractable behavior is understandable, the order it entered only enables his continued defiance of the surrender order. The trial court failed to ensure "swift and certain compliance with court orders prohibiting access, possession, and ownership of all firearms." RCW 9.41.801(1). Accordingly, we

---

[2] By the time the court issued the order, Holiwell claimed to be indigent and was represented by a public defender.

reverse the court's order and remand this matter for further proceedings consistent with this opinion.

Reversed and remanded.

_Feldman, J._

WE CONCUR:

_Dwyer, J._                    _Fearing, J._